KENT, Ch. J.
We are of opinioiMhat the evidence established an adverse possession in the defendant(a) at the time of the execution of the deed from Platt to Thorn, The defendant was then' in possession, holding under B. Isaacs, who claimed title under a deed for a valuable consideration from the executors of Brooks. This was a claim under color of title adverse to the plaintiff’s title, and sufficient to destroy all presumption that the defendant was in possession under the plaintiff, or held in obedience to his right. His possession was the possession of Isaacs, who claimed the lot as his own. We have repeatedly decided that a conveyance of lands held at the time adversely was void. Brinkerhoff ads. Jackson, ex dem. Jones and others, April term, 1802. Also Caines’ Rep. vol. 1, p. 90, and that adverse possession was equivalent to 'ouster, and made the statute of limitations to run. Jackson, ex dem. Putnams, v. Bowen, November term, 1803, 1 Caines’ Eep. 558. Jackson, ex dem. Gansevoort and, others, v. Parker, April term, 1802. The verdict ought, therefore, to be set aside for misdirection, with costs to abide the event.
LIVINGSTON, J.
In determining this cause it becomes necessary to ascertain the nature of the defendant’s possession, on the 5th of September, 1797. If it were then adverse to the title of Platt, *nothing passed by his deed to Thorn, and a new trial must be had. To settle this point it cannot be useful to examine very minutely how or with what intentions Todd or Cady came into possession. If the premises were then vacant, and Cady came in as a mere occupant, or intruder, without any claim of title, this alone would not prevent, an alienation by the real owner, or be regarded as a holding adverse to his title; but, because Cady came in without title, why should not he, or his alienee, be permitted, .to acquire one as soon as it was discovered where it resided ? or, because they had entered as trespassers, were they always to continue such, and that against their own inclination? It will be better, and we shall be less liable to error, which unnecessary refinement too often produces, if, instead of inquiring how Todd first acquired possession, we confine our attention to his situation and the manner of his holding at the date of Platt’s deed. If he then held in opposition to him, or under a title different from, or hostile to, his, this conveyance was void, and Thorn could take nothing by it. However the defendant may have obtained possession, which, by the by, was fairly, that is, by purchase of Cady, it is certain that at the period we are speaking of he had also bought of Isaacs, who was a purchaser for valuable consideration of the executors of the last will of Brooks, who was the grantee of Dunbar, under whom the plaintiff likewise claims. Whether these executors were empowered to *186 sell, or whether the title of Brooks had been legally transmitted to Todd, is very unimportant. It is sufficient that he claimed under a title which was opposed to the pretensions of Platt, which were founded on a deed from a different grantee of Dunbar. As the defendant, then, at this time, was not only in actual possession of these lands, but held them by title derived from the patentee, which be thought a good one, under him, that is, as his tenant, it is impossible, without perverting the most common terms, to give to such an occupancy any other appellation than that of an adverse possession. -He held by a title different from, and in defiance of, the plaintiff’s. If this be not an adverse possession, what circumstances can ever make one ? There must, therefore, be a new trial, with costs to abide the event of the suit.
Spencer, J.
A motion has been made in this case for a new trial, on a supposed misdirection of the judge who tried the cause. The only question arising is, whether the possession held by Todd, on the 5th of September, 1797, was such, as that, in ^judgment of law, the deed from Zephaniah Platt was operative to convey his title to William Thorn. It has been adjudged by our courts, that the mere possession of lands by a person claiming no title to them, is it not a disseisin of the rightful owner; and, consequently, that he might convey, or devise, notwithstanding the statute to prevent and punish champerty and maintenance. Such possession has been held as not adverse to, nor inconsistent with, the title of the true owner, because it was not taken in hostility to his rights; hence, the statute of limitations will not run in favor of such possessor, nor to the prejudice of the owner. These decisions are not only warranted by legal principles, but are highly important and necessary to be observed, in a country like ours, where there are such quantities of vacant lands, and where there exists a very extensive practice of taking up possessions without color of title, Cady’s *187 possession was clearly, then, not adverse to that of the true owner, and Todd having originally entered by his permission, it follows that his possession, in its commencement, was not adverse. To constitute a possession adverse to the trae owner, which is synonymous to a disseisin in spite ol him, there need be no legitimate right, but it must be accompanied with a claim to the land; if, therefore, Benjamin Isaacs had entered under his deed, which, though not stated to be a deed in fee, must be considered as such, I can entertain no doubt that such entry, claiming.a right to the land, would have constituted him a disseisor, or adverse holder of the lands; and, consequently, during such disseisin, or adverse holding, Platt could not have alienated the land. Todd was in possession when Isaacs took his deed; or, when he took possession, it was not adverse to the true owner. This possession is now attempted to be retained against Thorn, who, independent of the objection of the adverse holding by Todd, when he received a deed from Platt, would have the undoubted right to recover. The case states that Tpdd has held possession under Isaacs for about seven years. In what manner, whether as a tenant paying rent, or by purchase, or agreement to purchase, does not appear. It was in the defendant’s power to have rendered his relation to Isaacs explicit; failing in this, the fact is too loosely stated to work the consequences which would result to Thorn, from an adverse tenure when he purchased. It is possible that the agreementbetween Todd and Isaacs was, that the former should hold until the title was ascertained, and this they might construe a holding under Isaacs. In a case like *the present, where the title under which the lessor claims is clearly good, I think the court should be astute in finding grounds to retain a verdict so just; and that, unless legal principles are violated, the court ought not to put the plaintiff to the expense of amending his declaration by making Zephaniah Platt a lessor, and again going to trial in- a case where no legal defence can exist. On the ground, *188 therefore, that the defendant has not shown by what kind of tenure he held the lands from Isaacs when he could have shown this, I am of opinion the verdict ought not to be disturbed. [1]
New trial granted.

 See Jackson v. Bowen, 1 Caines’ Rep. 3, n. (a.)

 As to how and when adverse possession operates to prevent alienation, by the legal owner, see Jackson, ex dem. Jones, v. Brinkerhoff, 3 J. C. 101; Jackson, ex dem. Lathrop, v. Demont, 9 J. R. 55; Williams v. Jackson, ex dem. Tebbits, 5 J. R. 489; Jackson, ex dem. Bryant, v. Ketchum 8 J. R. 479; Jackson, ex dem. Benson, v. Matsdorf 11 J. R. 91; Jackson, ex dem. Smith, v. Vrooman, 13 J. R. 488; Whitaker v. Cone, 2 J. C. 58; Jackson v. Halsted, 5 Cow. 216; Belding v. Pitkin, 2 Cai. R. 147; Jackson v. Waters, 12 J. R. 365; Jackson v. Gumaer, 2 Cow. 552; Clowes v. Hawley, 12 J. R. 484 Jackson v. Collins, 3 Cow. 89; Jackson v. Jackson, 5 Cow. 173; Keneda v, Gardner, 4 Hill, 469; Cole and Coe v. Irvine, 6 Hill, 634.